IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

PENNSYLVANIA NATIONAL MUTUAL )
CASUALTY INSURANCE COMPANY, )
As subrogee of Autumn Contracting, Inc., )
                                          )
               Plaintiff, )
                                          )        Civil Action No. 1:15cv1283 (JCC/JFA)
v. )
                                            )
Y&J CONSTRUCTION, INC., )
                                          )
              Defendant. )
                                           )

## **PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS**

This matter is before the court on plaintiff's Motion for Default Judgment against Y&J Construction, Inc. (Docket no. 31) ("motion for default judgment"). In this action, Pennsylvania National Mutual Casualty Insurance Company ("plaintiff" or "Penn National") seeks a default judgment against defendant Y&J Construction, Inc. ("defendant" or "Y&J Construction") in the amount of $3,749,315.63. Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### **Procedural Background**

On October 2, 2015, plaintiff filed the complaint in this action alleging negligence, breach of contract, and seeking indemnification for a payment made under an insurance policy. (Docket no. 1) ("Compl."). Upon the filing of the complaint, a summons was issued for service on Y&J Construction at 7769 Water Street, Fulton, Maryland 20759. (Docket no. 2). Y&J Construction was served with a copy of the summons and the complaint and its exhibits on December 9, 2015 through personal service on its registered agent, Youngjae Jeon. (Docket no.

10). In accordance with Fed. R. Civ. P. 12(a), defendant's responsive pleading was due on December 30, 2015, twenty-one days after service of process. Defendant timely filed an answer to the complaint on December 22, 2015. (Docket no. 7).

The District Judge entered an Order on February 2, 2016, directing discovery to close in this matter by May 13, 2016. (Docket no. 11). On March 2, 2016, defendant filed a motion to stay the proceedings pending resolution of a related declaratory judgment action. (Docket no. 13). That action was brought by Essex Insurance Company, which sought a declaratory judgment that no coverage was available to Y&J Construction under its insurance policy. *See Essex Ins. Co. v. Y&J Construction, Inc., et al.*, No. 1:15-cv-1597-TSE-TCB. The District Judge granted defendant's motion and entered a stay of these proceedings pending the conclusion of the related declaratory judgment action on March 11, 2016. (Docket no. 17).

On February 7, 2017, plaintiff filed a motion to vacate the stay due to the resolution of the related action. (Docket no. 18). In that matter, the court entered an order finding that Essex Insurance Company had no obligation (1) to defend Y&J Construction in this matter, (2) to indemnify Y&J Construction for any judgment, settlement, or recovery in this action, and (3) to indemnify Penn National with respect to any subrogation rights it possesses as a result of Penn National's payment on behalf of its insured resulting from the fire caused by Y&J Construction. (Docket no. 20 ¶ 7). On February 22, 2017, defendant's counsel filed a motion to withdraw as counsel for Y&J Construction, explaining that they had been retained by Essex Insurance Company under the policy at issue in the declaratory judgment action. (Docket no. 20). On April 6, 2017, the District Judge entered an order granting the motion to vacate the stay and defendant's counsel's motion to withdraw. (Docket no. 22). The District Judge advised defendant that as a corporate entity, it must be represented by counsel in federal court

proceedings and directed defendant to secure replacement counsel or face default judgment. (*Id.*). The District Judge specified that "[i]f new counsel for Defendant does not enter an appearance in this case within twenty-one (21) days of the entry of this order, Plaintiff shall immediately obtain the entry of default from the Clerk pursuant to Federal Rule of Civil Procedure 55(a)." (*Id.* at 2).

Over twenty-one days have passed since the District Judge's order, and new counsel for defendant has not yet appeared in this action. Accordingly, plaintiff filed a motion for entry of default with an incorporated *Roseboro* notice on May 16, 2017. (Docket no. 24). On May 30, 2017, plaintiff noticed the motion for a hearing before the undersigned on June 16, 2017. (Docket no. 27). The motion for entry of default and notice of hearing were mailed to defendant at 7769 Water Street in Fulton, Maryland 20759 on the days they were filed with the court. (Docket nos. 24, 27). On June 16, 2017, counsel for the plaintiff appeared at the hearing before the undersigned and no one appeared on behalf of the defendant. On June 16, 2017, the Clerk of Court entered default in accordance with Fed. R. Civ. P. 55(a). (Docket no. 30). On August 3, 2017, plaintiff filed this motion for default judgment along with a supporting memorandum and a notice setting a hearing for September 1, 2017. (Docket nos. 31–33).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Based on defendant's failure to obtain new counsel to represent it in this action as ordered by the District Judge, the Clerk of Court has entered a default as to defendant. (Docket no. 30).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

### Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. Plaintiff alleges that this matter is properly brought in this court under 28 U.S.C. § 1332 based on complete diversity of citizenship and an appropriate amount in controversy. (Compl. ¶ 7).

Plaintiff is a Pennsylvania corporation with its principal place of business in Harrisburg, Pennsylvania. (Compl. ¶ 1). Defendant is a Maryland corporation with its principal place of business in Fulton, Maryland. (Compl. ¶ 5). Plaintiff's complaint also seeks a judgment in excess of $75,000. (Compl. ¶ 7). In its answer, defendant did not contest these allegations, but instead stated that it was without full and complete information to admit or deny these allegations. (Docket no. 7 ¶ 2). Given that these allegations are uncontested, it appears that this court has jurisdiction over the dispute pursuant to 28 U.S.C. § 1332.

This court also has personal jurisdiction over defendant because Virginia's long-arm statute authorizes the exercise of jurisdiction and defendant satisfies the "minimum contacts" test under the Due Process Clause of the Fourteenth Amendment. *See CFA Inst. v. Inst. of Chartered*

*Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Specifically, defendant has transacted business within Virginia and was transacting business in Virginia at the time of the incident giving rise to the complaint. (Compl. ¶ 6). Moreover, defendant did not object to personal jurisdiction in its answer, so has waived any objection. Fed. R. Civ. P. 12(h)(B)(ii). Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Virginia. (Compl. ¶ 8).

### Service

Pursuant to Fed. R. Civ. P. 4(h), a corporation may be served in a judicial district of the United States in the manner prescribed in Rule 4(e)(1) for serving an individual or by delivering a copy of the summons and complaint to an officer, managing, or general agent, or any other agent authorized by law to receive service of process.

The summons issued on October 2, 2015 (Docket no. 2) was returned executed on December 29, 2015 (Docket no. 10) with an affidavit of service that indicates that on December 9, 2015, a process server personally served Youngjae Jeon, Registered Agent of Y&J Construction, Inc., at 7769 Water Street, Fulton, Maryland 20759, with a copy of the summons, complaint, and attached exhibits (Docket no. 10 at 1). In response to this service, initial counsel made an appearance in this case on behalf of the defendant (Docket no. 6) and filed an answer on December 22, 2015 (Docket no. 7).

Accordingly, it appears that defendant was properly served with the summons and complaint.

### Grounds for Default Judgment

On June 16, 2017, the Clerk of Court entered default against defendant following a hearing on plaintiff's motion for entry of default. (Docket nos. 23–30). On August 3, 2017,

plaintiff filed this motion for default judgment along with a supporting memorandum and notice of a hearing for September 1, 2017. (Docket nos. 31–33). These pleadings were sent to defendant's president and registered agent on August 3, 2017. (Docket no. 31 at 3). No opposition has been filed by defendant and no one appeared on behalf of defendant at the hearing on September 1, 2017. Therefore, it is recommended that a default judgement in favor of plaintiff be entered against defendant.

## Liability

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." For the reasons set forth above, a default has been entered against defendant. The following facts are established by the complaint. (Docket no. 1).

Plaintiff is a Pennsylvania corporation whose principal place of business is in Harrisburg, Pennsylvania and brings this suit as subrogee of Autumn Contracting, Inc. ("Autumn Contracting"). (Compl. ¶ 1). Plaintiff issued an insurance policy to Autumn Contracting for the period of May 21, 2012 to May 21, 2013. (Compl. ¶ 3). Defendant is a Maryland corporation with its principal place of business in Fulton, Maryland. (Compl. ¶ 5).

In August 2011, Autumn Contracting entered into a contract with the United States Department of the Army to re-roof a building located in Fort Belvoir, Virginia. (Compl. ¶ 9). On or about November 7, 2011, Autumn Contracting entered into a master subcontract agreement ("Master Subcontract") with Y&J Construction, which provided that future projects would be assigned pursuant to purchase order authorizations. (Compl. ¶ 10). That agreement also provided various requirements regarding liability, insurance, and claims arising from future projects. (Compl. ¶ 11). On June 25, 2012, Autumn Contracting and Y&J Construction entered

into a Purchase Order Authorization for Y&J Construction to provide all labor, equipment, and tools to completely replace the roofing system for the Fort Belvoir building based on the project's specifications and drawings. (Compl. ¶ 12). In July 2012, Y&J Construction began its work on the Fort Belvoir roofing project. (Compl. ¶ 13).

On the morning of August 13, 2012, a co-owner of Y&J Construction was working as the foreman on the Fort Belvoir project with two of his employees. (Compl. ¶ 14). While they worked to adhere flashing material to a dormer window on the third floor of the roof, the roof caught fire. (*Id.*). The fire spread throughout the roof, causing substantial damage to the building. (Compl. ¶ 15). As a result of the fire, the Department of the Army demanded that Autumn Contracting perform repairs, and Autumn Contracting thereafter made a demand on the insurance policy issued by Penn National. (Compl. ¶¶ 16–17). Pursuant to its insurance policy, Penn National issued payment to the Department of the Army on behalf of Autumn Contracting for damages caused by the fire in the amount of $3,749,315.63. (Compl. ¶ 20). Penn National alleges that it is subrogated to Autumn Contracting's rights and claims against third parties, including Y&J Construction, under the terms of the insurance policy it issued to Autumn Contracting. (*Id.*).

In Count I of the complaint, plaintiff alleges that the fire was caused by defendant's negligence. (Compl. ¶¶ 22–25). Specifically, plaintiff alleges that defendant failed to exercise reasonable care regarding the roofing installation for the Fort Belvoir project by failing to obtain necessary permits and follow proper safety protocols. (Compl. ¶ 22). Plaintiff further alleges that defendant improperly left the site unattended, and failed to exercise reasonable care in the process of adhering flashing material to the dormer window on the third-floor roof, failed to have

the proper safety protections on the roof, and failed to have the proper safety watching in place. (*Id.*).

Plaintiff also alleges that defendant breached the Master Subcontract and the Purchase Order Authorization in causing the fire. (Compl. ¶¶ 26–31). Plaintiff contends that defendant failed to (1) meet or exceed applicable agency regulations; (2) meet federal, state, and local codes; (3) institute the proper safety protocols; (4) repair, rebuild, or make good on the loss caused by its negligence; and that these failures are breaches of the Master Subcontract and Purchase Order Authorization. (Compl. ¶ 28). Plaintiff further alleges that defendant's work was not of workmanlike quality, in breach of these contracts. (*Id.*). As a result of defendant's breaches, plaintiff was required to pay $3,749,315.63 and has incurred attorney's fees and costs. (Compl. ¶¶ 29–30).

Plaintiff's final claim is that defendant failed to indemnify it as provided under the Master Subcontract Agreement and plaintiff seeks indemnification in the amount of $3,749,315.63. (Compl. ¶ 35).

## Measure of Damages

Plaintiff's complaint sought a judgment for $3,749,315.63, plus interest, legal fees, and costs. (Docket no. 1). In its motion for default judgment, plaintiff seeks a judgment in the amount of $3,749,315.63 with interest from May 5, 2014. (Docket no. 31 at 1).

As an initial matter, plaintiff alleges that as a result of the fire, it made payments to the Department of the Army on behalf of its insured, Autumn Contracting, in the amount of $3,749,315.63. (Compl. ¶ 20). Plaintiff alleges that pursuant to the terms of its insurance policy issued to Autumn Contracting, it is subrogated to Autumn Contracting's rights and claims against third parties, including defendant. (*Id.*). Although a defendant in default admits the

8

allegations contained in the complaint, it is notable that neither the insurance policy nor the subrogation clause from that policy have been submitted to the court.

**Negligence**

In examining plaintiff's claim, a federal court sitting in diversity jurisdiction must apply state substantive law as announced by the state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Pursuant to Virginia law, the elements of a negligence action are a legal duty on the part of the defendant, breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff. *Blue Ridge Serv. Corp. of Virginia v. Saxon Shoes, Inc.*, 271 Va. 206, 218 (2006) (citing *Trimyer v. Norfolk Tallow Co.*, 192 Va. 776 (1951)). Proximate cause is "the act or omission which, in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the event, and without which that event would not have occurred." *Blue Ridge Serv. Corp.*, 271 Va. at 219 (citing reference omitted).

Here, plaintiff alleges that defendant failed to exercise reasonable care regarding installation of the roofing of the Fort Belvoir buildings in several ways. Plaintiff claims that defendant failed to obtain necessary permits and follow proper safety protocols, and improperly left the site unattended. (Compl. ¶ 22). Additionally, plaintiff alleges that defendant failed to exercise reasonable care in the process of adhering flashing material to the dormer window on the third-floor roof, and further failed to have the proper safety protections on the roof in place. (*Id.*). This failure to exercise reasonable care, plaintiff contends, directly and proximately caused the fire, which forced plaintiff to pay $3,749,315.63 in damages on behalf of its insured. (Compl. ¶¶ 23–24).

**Breach of Contract**

Under Virginia law, the required elements for proving breach of contract are: "(1) a legal obligation of a defendant to the plaintiff; (2) a violation or breach of that right or duty; and (3) a consequential injury or damage to the plaintiff." *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 546 (1989) (quoting *Caudill v. Wise Rambler, Inc.*, 210 Va. 11, 13 (1969)).

Here, plaintiff alleges that defendant breached the Master Subcontract and the Purchase Order Authorization by (1) failing to meet or exceed the applicable agency regulations; (2) failing to meet federal, state, and local codes; (3) failing to comply in obtaining the necessary permits; (4) failing to institute the proper safety protocols; (5) failing to repair, rebuild, or make good on the loss caused by its negligence; (6) starting a fire on the roof; and (7) failing to provide workmanlike quality and comply with the applicable codes and regulations. (Compl. ¶ 28). Under the terms of the Master Subcontract, defendant agreed to warrant that all work or materials it provided would meet or exceed all applicable federal, state, and local laws, applicable codes, agency regulations, and would be of merchantable and workmanlike quality, free of defects. (Compl., Ex. 1 ¶ 19(A) & (B)). In the complaint, plaintiff alleges that defendant breached the Master Subcontract by failing to uphold these warranties. (Compl. ¶ 28). Because a defendant in default admits the factual allegations in the complaint, a finding that defendant breached the Master Subcontract is appropriate.

The Master Subcontract Agreement also included a provision regarding defendant's liability, which provided that

> Subcontractor shall be liable to [Autumn Contracting] for all costs [Autumn Contracting] incurs as a result of Subcontractor's failure to perform the work on any specific [Purchase Order Authorization]. Subcontractor's failure to perform shall include the failure of its suppliers and/or subcontractors to perform.

Subcontractor's liability shall include, but not be limited to (1) damages and other delay costs payable by [Autumn Contracting] to the Owner; (2) [Autumn Contracting's] increased cost of performance, such as extended overhead; (3) warranty and rework costs; (4) liability to third parties; (5) excess costs; and (6) attorney's fees and related costs.

Compl., Ex. 1 ¶ 6(B). In this matter, plaintiff alleges that defendant caused a fire, and the Department of the Army requested payment from Autumn Contracting for repairs from the damages from that fire. (Compl. ¶¶ 28–29). Because of its insurance policy, plaintiff paid the Department of the Army on behalf of Autumn Contracting. (Compl. ¶ 29). Such payment falls squarely within item (1) as listed above, and defendant's failure to pay Autumn Contracting the costs payable to the Department of the Army constitutes a breach of the Master Subcontract. Accordingly, defendant should be liable to plaintiff for breach of this clause of the Master Subcontract in the amount due by Autumn Contracting, which is $3,749,315.63.

**Indemnification**

Plaintiff also asserts that it is entitled to indemnification under the terms of the Master Subcontract. (Compl. ¶¶ 32–35). The indemnification clause plaintiff cites provides that

> A. Subcontractor hereby assumes the entire responsibility and liability for all work supervision, safety, and labor provided hereunder, whether or not erected in place, and for all plant, scaffolding, hoists, tools, equipment, supplies, and other things provided by Subcontractor until final acceptance by Owner and [Autumn Contracting]. In the event of any loss, damage, or destruction thereof from any cause, Subcontractor shall be liable therefore, and shall repair, rebuild and make good said loss, damage, or destruction at Subcontractor's cost.
>
> B. Subcontractor shall be liable to [Autumn Contracting] for all costs [Autumn Contracting] incurs as a result of Subcontractor's failure to perform the work on any specific [Purchase Order Authorization]. Subcontractor's failure to perform shall include the failure of its suppliers and/or subcontractors to perform. Subcontractor's liability shall include, but not be limited to (1) damages and other delay costs payable by [Autumn Contracting] to the Owner; (2) [Autumn Contracting's] increased cost of performance, such as extended overhead; (3) warranty and rework costs; (4) liability to third parties; (5) excess costs; and (6) attorney's fees and related costs.

C. Subcontractor shall indemnify and hold [Autumn Contracting] harmless from any and all damages suffered by [Autumn Contracting], its agents, servants, employees and sureties resulting from the negligence of Subcontractor and its employees, agents or subcontractors.

Compl., Ex. 1 ¶ 6.

**Interest, Attorney's Fees, and Costs**

In the complaint, plaintiff seeks an award of all costs and attorney's fees it incurred in this matter as well as an award for judgment interest from May 5, 2014. (Docket no. 1). Although the Master Subcontract contains a provision for the award of attorney's fees and costs, plaintiff does not address its request for attorney's fees in its motion for default judgment, or specify the amounts claimed for legal fees and costs.[1] Due to plaintiff's failure to request an award of attorney's fees in its motion for default judgment, attorney's fees should be denied. Plaintiff may, however, submit a bill of costs pursuant to 28 U.S.C. § 1920 once a judgment has been entered.

Plaintiff also requests "interest from May 5, 2014," thereby seeking prejudgment interest. (Docket no. 31 at 1). In a diversity case, the law announced by the state's highest court governs the award of prejudgment interest. *See Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). Under Virginia law, "a money judgment entered in an action arising from a contract shall carry interest at the rate lawfully charged on such contract, or at six percent annually, whichever is higher." Va. Code § 6.2-302(A). Here, the contract has no provision for accruing interest. As such, to the extent that an award of prejudgment interest is appropriate in this matter, it should be awarded at the statutory rate of 6% per annum.

---

[1] Paragraph 11C of the Master Subcontract Agreement provides, "In the event that one Party pursues a lawsuit against the other party to enforce the terms of the Agreement, the prevailing party shall be entitled to its reasonable expended legal fees and costs from the non-prevailing party as determined by a court of competent jurisdiction." (Compl. at 11).

Plaintiff does not expressly seek post-judgment interest in its motion for default judgment, instead asking for "interest from May 5, 2014." (Docket no. 31 at 1). In this federal diversity case, federal law governs the calculation of post-judgment interest. *See Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir. 1989). Pursuant to 28 U.S.C. § 1961, a uniform federal rate for post-judgment interest has been established "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Parties may contractually agree to a different rate, but that agreement must be expressed in 'clear, unambiguous and unequivocal language.'" *Braunstein v. Pickens*, 274 F.R.D. 568, 574 (D.S.C. 2011) (internal citations omitted). When there is no clear, unambiguous, and unequivocal agreement to a different rate, the statutory rate applies. *Id.* Here, there is no indication of a clear, unambiguous, and unequivocal agreement between the parties to set a different rate of post-judgment interest.

Thus, the undersigned recommends a finding that interest subsequent to the date of judgment should be paid in accordance with, and at the rate prescribed by, 28 U.S.C. § 1961.

### Conclusion

For these reasons, the undersigned recommends that default judgment be entered in favor of plaintiff Pennsylvania National Mutual Casualty Insurance Company and against defendant Y&J Construction, Inc. in the total amount of $3,749,315.63, plus prejudgment interest at 6% per annum from May 5, 2014 to the date of judgment and post-judgment interest at the rate prescribed by 28 U.S.C. § 1961.

### Notice

By means of the court's electronic filing system and by mailing a copy of this proposed findings of fact and recommendations to Y&J Construction, Inc., c/o Youngjae Jeon, Registered Agent, at 7769 Water Street in Fulton, Maryland 20759, the parties are notified that objections to

this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 1ST day of September, 2017.

/s/
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia